## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00480-COA

FREDRICO STONE                                                                APPELLANT

v.

STATE OF MISSISSIPPI                                                          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/26/2013 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AZKI SHAH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF POSSESSION OF COCAINE AND SENTENCED AS A HABITUAL OFFENDER TO SERVE SIXTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION AND TO PAY A $250,000 FINE |
| DISPOSITION: | AFFIRMED: 10/06/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND JAMES, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Fredrico Stone was convicted of possession of cocaine.  Stone was sentenced as a habitual offender to sixteen years in the custody of the Mississippi Department of Corrections and ordered to pay a $250,000 fine.  Stone filed posttrial motions, which the trial court denied.  Stone now argues that: (1) the trial court erred by selecting the alternate jurors; (2)

the trial court erred by refusing to give his circumstantial-evidence jury instruction; (3) the verdict is against the overwhelming weight of the evidence; and (4) the trial court erred by denying his motion for a directed verdict.

FACTS

¶2.     On September 16, 2012, Officer Romeisha Moore observed a Saturn traveling at a high rate of speed in Clarksdale, Mississippi.  Officer Moore initiated a traffic stop and ran the license-tag numbers.  She determined that the license tag on the Saturn was actually registered to a Nissan.  The license tag was also expired.  Stone, the driver of the Saturn, admitted to Officer Moore that he was driving without a license.  There were two other men in the car with Stone – one man in the front passenger seat, and the other in the back seat.

¶3.     Officer Moore noted that Stone was having difficulty speaking.  She noticed something plastic in his mouth.  Officer Moore testified that she attempted to remove the item from Stone's mouth, but he resisted and the two "tussled."  Officer Moore stated Stone turned away from her toward the passenger seat and, fearing for her safety, she then tasered him.  She handcuffed Stone and removed him from the car.  While standing near the passenger side of the car, Officer Moore stated, "I looked on the ground and saw some plastic – some white substance in some plastic. . . . It was some white substance in small plastic bags."  She testified that they were wet and looked like the items she attempted to retrieve from Stone's mouth.  Officer Moore testified that a bigger clear bag was on the ground near the small plastic bags.  Officer Moore stated she placed the items in a paper bag and placed the bag in an evidence locker at the police station.  On cross-examination, Officer Moore

2

testified that the item in Stone's mouth was "something plastic, and it [sic] was a big ball behind it." She testified that there were approximately twenty small bags scattered approximately six inches under the passenger side of the car.

¶4. On redirect, Officer Moore read from the incident report[1] she had completed after arresting Stone, quoting: "There were about [twenty] small rock-size bags in a big plastic bag, which was the big bag Mr. Stone had inside his mouth."

¶5. Officer Frederick Burton, also with the Clarksdale Police Department, responded to the scene. Officer Burton saw the plastic bags on the ground near the car, describing them as "small baglets [sic] of rock-like substance in clear[,] small plastic bags."

¶6. Approximately twenty-nine bags were recovered from the scene. The substance inside the bags testified positive for cocaine.

DISCUSSION

I. ALTERNATE JURORS

¶7. In his first issue on appeal, Stone contends the trial court erred in its manner of selecting the two alternate jurors. Stone argues that the trial court failed to follow Uniform Rule of Circuit and County Court Practice 4.05 and Mississippi Code Annotated section 13-5-67 (Rev. 2012), resulting in a violation of his constitutional rights. After the jurors were qualified, fourteen jurors were selected to hear Stone's case. Prior to the submission of the case to the jury, the trial court selected two names out of a cup and designated those two names as the alternate jurors. These two alternate jurors were then excused while the

---

[1] This incident report was not introduced into evidence or marked for identification purposes.

remaining twelve jurors retired to deliberate.

¶8. Stone failed to make a contemporaneous objection; thus, this issue is waived. *Bunch v. State*, 123 So. 3d 484, 491 (¶16) (Miss. Ct. App. 2013). Regardless of the procedural bar, we find no merit to this issue. This Court gives a "substantial degree of deference . . . to the judiciary in determining its procedures for empaneling a jury, limited only by statutory guidelines." *Moore v. State*, 816 So. 2d 1022, 1026 (¶10) (Miss. Ct. App. 2002). Mississippi Code Annotated section 13-5-87 (Rev. 2012) provides that "[a]ll the provisions of law in relation to the listing, drawing, summoning[,] and impaneling juries are *directory* merely, and a jury listed, drawn, summoned[,] or impaneled, though in an informal or irregular manner, shall be deemed a legal jury after it shall have been impaneled and sworn . . . ." (Emphasis added). According to the record, these alternate jurors were "drawn in the same manner, [had] the same qualifications, [were] subject to the same examination and challenges for cause, [took] the same oath[,] and [had] the same functions, powers, facilities[,] and privileges as the regular jurors." Miss. Code Ann. § 13-5-67.

## II. JURY INSTRUCTION

¶9. Stone next contends the trial court erred in denying his request for a circumstantial-evidence jury instruction. A circumstantial-evidence instruction is not required unless the State's case is wholly circumstantial. *Arguelles v. State*, 867 So. 2d 1036, 1042 (¶22) (Miss. Ct. App. 2003). "The existence of any direct evidence eliminates the need for a circumstantial[-]evidence instruction." *Sullivan v. State*, 749 So. 2d 983, 992 (¶21) (Miss. 1999). An example of direct evidence is "eyewitness testimony to the gravamen of the

4

offense charged." *McInnis v. State*, 61 So. 3d 872, 876 (¶13) (Miss. 2011). "The term 'gravamen' is defined as the 'substantial point or essence of a claim, grievance, or complaint.'" *Id*. (citation omitted). Here, Officer Moore's testimony constituted direct evidence such that a circumstantial-evidence instruction was properly refused. Officer Moore testified that she saw something plastic in Stone's mouth with a "a big ball behind it." After Stone refused to spit out the item in his mouth, he turned toward the occupant sitting in the front passenger seat, and, Officer Moore, concerned about losing control of the situation, subdued Stone using her taser. Officer Moore subsequently noticed several bags on the ground by the passenger side of the car. She stated these small plastic bags contained a white substance. The bags were wet and resembled the plastic item she attempted to retrieve from Stone's mouth. In her incident report, a portion of which was read in court, Officer Moore stated: "There were about [twenty] small rock-size bags in a big plastic bag, which was the big bag Mr. Stone had inside his mouth." Officer Burton testified that he saw these small bags on the ground by the passenger side of the car, stating they contained a "rock-like substance." The white substance in the bags tested positive for cocaine. This issue is without merit.

III.    WEIGHT OF THE EVIDENCE

¶10.    Stone argues the guilty verdict is against the overwhelming weight of the evidence. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."

5

*Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005). We review the evidence in the light most favorable to the verdict, and we will not overturn the verdict unless we find that the trial court abused its discretion in denying the motion for a new trial. *Woodard v. State*, 765 So. 2d 573, 576 (¶16) (Miss. Ct. App. 2000) (citation omitted).

¶11. There was evidence that Stone had a plastic bag in his mouth and refused to show Officer Moore the bag. Officer Moore testified Stone turned away from her, toward the passenger – indicating Stone passed the plastic bags to his passenger, who then threw them out of the car. The plastic bags were found on the ground by the car and were wet. The substance in the bag tested positive for cocaine. Evaluating the evidence in the light most favorable to the verdict, we cannot find that allowing the guilty verdict to stand would sanction an unconscionable injustice. This issue is without merit.

### IV. MOTION FOR A DIRECTED VERDICT

¶12. In his final issue on appeal, Stone contends the trial court erred in denying his motion for a directed verdict. Directed verdicts challenge the sufficiency of the evidence. *Jordan v. State*, 936 So. 2d 368, 373 (¶24) (Miss. Ct. App. 2005). In reviewing the sufficiency of the evidence, "the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]" *Bush*, 895 So. 2d at 843 (¶16) (citation and internal quotation marks omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. *Id.*

6

Furthermore, it is well-settled law that the jury determines the credibility of the witnesses and resolves conflicts in the evidence. *Davis v. State*, 866 So. 2d 1107, 1112 (¶17) (Miss. Ct. App. 2003). Stone's argument is similar to that expressed in the previous issue. From the evidence described in the previous issue, we find the evidence shows beyond a reasonable doubt that Stone was in possession of cocaine. This issue is without merit.

¶13. **THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF COCAINE AND SENTENCE AS A HABITUAL OFFENDER OF SIXTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION AND TO PAY A $250,000 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT.**