# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00435-COA

**TERRY LYNN BARBER A/K/A TERRY L. BARBER A/K/A TERRY BARBER**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/14/2016 |
| TRIAL JUDGE: | HON. JAMES MCCLURE III |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF POSSESSION OF AT LEAST ONE-TENTH GRAM BUT LESS THAN TWO GRAMS OF METHAMPHETAMINE, AND SENTENCED TO THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE, AND TO PAY A FINE OF $500 AND AN ASSESSMENT OF $100 TO THE MISSISSIPPI CRIME VICTIMS' COMPENSATION PROGRAM |
| DISPOSITION: | AFFIRMED - 06/20/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.    Terry Lynn Barber was convicted of possession of methamphetamine and sentenced

to three years in the custody of the Mississippi Department of Corrections (MDOC) as a habitual offender without eligibility for parole. He claims on appeal that his defense counsel was ineffective in failing to request a jury instruction on circumstantial evidence. Finding no error, we affirm.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

¶2. On June 28, 2015, Deputy Rob Roberson of the Panola County Sheriff's Department conducted a traffic stop of Barber's vehicle on Interstate 55, as Barber had crossed the "fog line" on the shoulder of the road. Barber's son, Cody Dylan Barber, was a passenger in the car. Deputy Roberson became suspicious after Barber and Cody gave conflicting information about where they had been that evening, and he asked for permission to search the vehicle. Barber consented, and the search of the vehicle revealed several small baggies used in the sale of narcotics and one baggie containing a crystalline white powder under the passenger's seat, which was later confirmed to be methamphetamine.

¶3. Barber and Cody were arrested and transported to the Panola County Detention Center. Officer Steven Moore collected Barber's personal effects, including his wallet, and took inventory of the items. The items were securely stored in the facility's property storage area. Two days later, Barber's wife visited the jail and asked Deputy Bob Brownlee if she could pick up Barber's debit card. The deputy opened the secured bag containing Barber's personal effects and retrieved Barber's wallet. While looking through the wallet to get the debit card, Deputy Brownlee observed a bag of methamphetamine fall out of the wallet.

¶4. Barber and Cody were indicted on November 4, 2015, on one count of conspiracy to

2

possess methamphetamine and one count of possession of methamphetamine in the amount of at least two grams but less than ten grams. Barber was charged as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015). Cody claimed responsibility for the drugs found in the car; so the State reduced the charges against Barber to possession of methamphetamine of at least one-tenth gram but less than two grams for the bag discovered in Barber's wallet.

¶5. A jury trial was held on February 16, 2016, in Panola County Circuit Court. Officer Moore testified that he opened the main compartment of the wallet to inventory any cash, but he did not look in the "small individual pockets" and noted nothing unusual about the wallet. Deputy Brownlee testified that when he went to retrieve the wallet, the bag containing Barber's personal effects "was secured, tied up like all of them are." When Deputy Brownlee pulled out the debit card, he "pulled out a sack of what looked like methamphetamine with it." He immediately contacted a narcotics agent, Tyler Mills, who said that he took the item that fell from the wallet, put it into an evidence bag, and sent it to the Mississippi Crime Lab.[1] Barber testified that he left his wallet on the dashboard of his car while talking with Deputy Roberson and that the deputy "looked through [his] wallet." He stated that the wallet was left in the vehicle, and another officer brought it to him upon arrival at the jail. When he arrived at the jail, Barber said he and Officer Moore "went through [the wallet]," and he retrieved cards out of his wallet at that time. But Barber later said that Deputy Roberson's testimony – that Barber had his wallet when he was booked at the jail – was true. On

[1] Barber does not dispute on appeal that the substance was methamphetamine.

rebuttal, Officer Moore said Barber got the cards after the drugs were found.

¶6.      Barber was convicted of possession of methamphetamine of at least one-tenth gram but less than two grams.  The trial court sentenced Barber to three years in the custody of the MDOC as a habitual offender without eligibility for parole, and ordered him to pay a fine of $500.[2]  Barber filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict, which the trial court denied.  On appeal, Barber contends that his defense counsel's failure to request a jury instruction on circumstantial evidence constitutes ineffective assistance of counsel, and that his conviction and sentence should be reversed and vacated.

## DISCUSSION

¶7.      Barber argues there was no direct evidence that he possessed the methamphetamine discovered in his wallet, and the jury had to infer the methamphetamine was in the wallet when Barber possessed his wallet.  Therefore, he claims defense counsel's failure to request a circumstantial-evidence jury instruction constituted ineffective assistance of counsel. "Because appellate courts are limited to the trial record on direct appeal, 'generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings.'" *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016) (quoting *Dartez v. State*, 177 So. 3d 420, 422-23 (¶18) (Miss. 2015)).  "Under those circumstances, 'the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue' in a PCR motion." *Darnell v. State*, 202 So. 3d 281, 285 (¶15) (Miss. Ct. App. 2016)

---

[2] Barber was given credit for 150 days served in custody awaiting trial.

4

(quoting *Dartez*, 177 So. 3d at 423 (¶18)).

¶8.     However, Rule 22(b) of the Mississippi Rules of Appellate Procedure states: "Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record." The merits of this type of claim will be addressed if "(1) the record affirmatively show[s] ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Colenburg v. State*, 735 So. 2d 1099, 1101 (¶5) (Miss. Ct. App. 1999). The State does not stipulate as to the adequacy of the record. However, as the issue is contingent upon whether certain evidence was direct or circumstantial, we find the trial record adequate to consider the merits of Barber's claim of ineffective assistance of counsel.

¶9.     "A circumstantial-evidence case is one where the State is 'without a confession and wholly without eyewitnesses to the gravamen of the offense charged.'" *Carson v. State*, 125 So. 3d 104, 106 (¶5) (Miss. Ct. App. 2013) (quoting *Garrett v. State,* 921 So. 2d 288, 291 (¶17) (Miss. 2006)). While Barber did not confess, he did acknowledge that the wallet was his property. Although Officer Moore did not "recall" Barber's taking the wallet out of his pants pocket, he did provide eyewitness testimony that the wallet was in Barber's personal effects when he booked Barber and took inventory. There was also eyewitness testimony by Deputy Brownlee that the methamphetamine was found in Barber's wallet when it was taken from the jail's secure storage facility. "[T]he direct evidence that avoids the instruction must directly and not by inference implicate the accused and not just show that there has been a

5

crime. Direct evidence is eyewitness accounts." *Price v. State*, 749 So. 2d 1188, 1194 (¶16) (Miss. Ct. App. 1999). In *Jenkins v. State,* 757 So. 2d 1005, 1009 (¶20) (Miss. Ct. App. 1999), this Court determined that a trial court properly denied a circumstantial-evidence instruction in a constructive-possession case when marijuana was found by law enforcement in the defendant's house, not on his person.

> [T]he issue of whether Jenkins had exclusive dominion and control is a separate question from whether this is a circumstantial[-]evidence case. Here, there is direct evidence of the existence of the drugs in Jenkins's house. That is stronger than a precedent that upheld the denial of a circumstantial[-] evidence instruction when marijuana was found in the automobile that the defendant was driving but did not own. *Boches v. State,* 506 So. 2d 254, 260 (Miss. 1987). The discovery of the drugs in the car being driven by the defendant in *Boches,* just as the existence of the drugs in Jenkins's house, avoids the need for the instruction on circumstantial evidence.

*Jenkins*, 757 So. 2d at 1009 (¶20); *see also Givens v. State*, 618 So. 2d 1313, 1319 (Miss. 1993) (finding that a defendant was not entitled to a circumstantial-evidence instruction in view of direct eyewitness testimony of a police officer who saw the defendant throw away a bag that contained contraband).

¶10. While the wallet was no longer in Barber's possession when the drugs were found, Barber testified that he possessed the wallet at the detention center prior to his effects being taken into the chain of custody.

> Q. Well, you heard Deputy Roberson testify that you had your wallet on when you went to the jail and you had your wallet when Officer Moore booked you at the jail?
>
> A. Uh-huh.
>
> Q. It was placed in your personal effects, and at your request[,] they got a card out of it?

6

A.      Yes, sir.

Q.      That's all true; right?

A.      Yes, sir.

Q.      The only thing you disagree with is you're telling us you don't know where the meth came from?

A.      That's exactly right.

Barber also admitted that he "ha[d] no reason to think" that either Officer Moore or Deputy Brownlee would plant the drugs on him.

¶11.    As there is direct evidence that Barber owned and possessed the wallet in which the drugs were found, the evidence was not "purely circumstantial." Barber's claim of ineffective assistance of counsel is without merit, and the judgment is affirmed.

¶12.    **THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY, SECOND JUDICIAL DISTRICT, OF CONVICTION OF POSSESSION OF AT LEAST ONE-TENTH GRAM BUT LESS THAN TWO GRAMS OF METHAMPHETAMINE, AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE, AND TO PAY A FINE OF $500 AND AN ASSESSMENT OF $100 TO THE MISSISSIPPI CRIME VICTIMS' COMPENSATION PROGRAM, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**